**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____
                                                             :
**UNITED STATES OF AMERICA**                :
                                                             :
    -against-                              :   20 Cr. 607 (LJL)
                                                             :
**GEORGE ADAMS**                                  :
                                                             :
_____:


# DEFENSE SENTENCING SUBMISSION


                              **Matthew J. Kluger, Esq.**
                              **888 Grand Councourse, 1H**
                              **Bronx, New York  10451**
                              **(718) 293-4900**

# MATTHEW J. KLUGER
ATTORNEY AT LAW

888 GRAND CONCOURSE, SUITE 1H
BRONX, NEW YORK 10451
(718) 293-4900 • FAX (718) 618-0140
www.klugerlawfirm.com

February 15, 2022

By ECF
Honorable Lewis J. Liman
U.S. District Judge
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

  Re: United States v. George Adams
     20 Cr. 607 (LJL)

Dear Judge Liman,

  This letter is respectfully submitted on behalf of George Adams in advance of his sentencing scheduled for February 22, 2022, at 2:00 p.m.[1] On September 13, 2021, Mr. Adams appeared before your Honor and pled guilty to Count 1 of the above-referenced Indictment which charged him with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1344. The parties and Probation all agree that at a total offense level of 9 and a Criminal History Category of I (the defendant has zero criminal history points), the advisory sentencing guidelines range in this case is 4 to 10 months of imprisonment.[2]

  After considering all the 18 USC §3553(a) factors in this case, particularly Adam's "lack of criminal convictions and verified employment history," Probation recommends a non-custodial sentence with restitution and 240 community service. While the defense certainly agrees that a custodial sentence is not warranted here, we nevertheless submit that a two-year period of supervised release with two-months of home detention, restitution, and outpatient drug treatment and counseling is sufficient, not greater than necessary, and does more to accomplish the goals of sentencing.

---

[1] Although the Court's Individual Rules of Practice require that "a defendant's sentencing submission be filed and served fourteen (14) days prior to sentencing," the Court has allowed the defense to submit its sentencing submission by February 15, 2022. See Order dated February 14, 2022, Doc. #56.

[2] Like most fraud cases, the guidelines range in this case is driven primarily by the loss amount. Here, because Adams is responsible for a loss of approximately $26,700.86 representing two altered checks that were deposited into his account, the offense level is increased four levels pursuant to USSG §2Bl.l(b)(1)(C).

As noted in the PSR, Mr. Adams accepts full responsibility for his unlawful behavior and allocuted accordingly when he pled guilty. This submission is not meant to minimize, justify or excuse Mr. Adams's conduct in any way. Rather, it is submitted to assist the Court in its consideration of all of the relevant §3553(a) factors and to arrive at a sentence in this case which is sufficient but not greater than necessary.[3]

### Sentencing After *United States v. Booker* and the Application of the Sentencing Guidelines to this Case

As this Court knows, the Supreme Court's decision in United States v. Booker substantially altered a court's obligation with respect to sentencing. The Sentencing Guidelines are of course no longer mandatory and while still important and instructive, they remain just one of several factors set forth in 18 U.S.C. § 3553(a) which a sentencing court must consider in determining a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that these purposes are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)  to afford adequate deterrence to criminal conduct;
(C)  to protect the public from further crimes of the defendant; and
(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

To arrive at such a sentence, the Court is further directed to consider: (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the kinds of sentences available; (3) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (4) policy statements issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among similarly situated defendants; and (6) the need to provide restitution to any victims of the offense.  See 18 U.S.C. § 3553(a)(1), (a)(3)-(7).

#### Personal Background

George Wesley Adams, Jr., was born on March 2, 1992, in Kings County, New York, to the nonmarital union of George Adams, Sr., and Maria Clemente. Adams' father is deceased, and his mother, age 57, is a retired schoolteacher living in New Milford, Connecticut. Adams, who also resides in New Milford, has regular interaction with his mother who is aware of his involvement in the instant offense. Adams has one sister, Nicolette Marie Adams, age 26, who works at a daycare center in Carmel, New York. For

---

[3] Counsel is still waiting for letters to the Court from Mr. Adams and his mother. Upon receipt, I will file same under separate cover as expeditiously as possible.

the past five years, Mr. Adams has been in a committed relationship with Andrea Perez, age 24, who works at AT&T. The couple have no children.

For the first 14-years of his life, Adams lived in Bay Ridge, Brooklyn with his mother, although his father lived nearby. Despite his parents' separation status, they were able to successfully coparent. Adams recalled that his family collectively partook in activities and vacationed together, and both parents provided emotional and financial sustenance. In or around 2006, the entire family relocated to Carmel, New York. Adams disclosed during his probation interview that although his father "consumed alcohol regularly," he did not feel that his father's alcohol consumption interfered with his parenting. Unfortunately, in 2013, Adams' father committed suicide. At the time, Adams was attending Dutchess Community College in Poughkeepsie, New York. According to Adams, his father's death "ruined me" and he ultimately withdrew from school because he was no longer able to focus. Although he later went to Westchester Community College in Valhalla, Adams ultimately withdrew in 2018 because he was unable to balance his schoolwork, his employment obligations, and the trauma from his father's suicide.

Mr. Adams is currently working at Chemical Marketing Concepts - Odyssey Logistics & Technology in New Milford, Connecticut. He is assigned to the receiving department and earns $15.00 an hour. Prior to his arrest, George worked at C&S Wholesale Grocers in Newburgh, New York as an incentive selector where he earned $26.00 an hour. It is notable that despite the stress and uncertainty of his current legal predicament, Adams was able to find and maintain gainful employment. As Probation notes, George's employment status and pretrial compliance "suggests that he can be successful under community-based supervision." See PSR *Justification*.

The Nature and Circumstances of the Offense

Although undoubtably serious, Adam's offense was nevertheless crude and unsophisticated. It is the type of crime that one would expect from someone who is unfamiliar with criminal activity and is acting impulsively and irrationally. In fact, if Adams had been thinking clearly at the time, it is doubtful that he would have participated in the offense at all. In short, on two occasions in July 2019, Adams permitted his codefendants to deposit altered checks into his bank account. More specifically, the "To" field on one check in the amount of $13,800 was altered to read "George W. Adams Jr." and then deposited into Adam's own Chase account. On another occasion, a check that was originally drafted in the amount of $76.39 was changed to $12,900.86 and the "To" field was altered to read "George W. Adams." This check was also deposited into Adam's Chase account.[4] Although Adams did not alter or deposit the checks himself, he did withdraw his share of the fraudulent funds. The remainder of the funds were withdrawn and shared by his codefendants. Thus, Adams' crime essentially consisted of "turning a blind eye" while others used his account to deposit altered checks, and then benefitted financially from that same willful ignorance.

---

[4] The total amount of the two checks deposited into Adam's account was $26,700.86.

In this case, it's difficult to separate the crime itself from Adam's personal circumstances at the time. After his father's death, George began drinking heavily and smoking marijuana. Notably, he never received any counseling to help him deal with the trauma of his father's suicide. For years he tried to self-medicate and deal with very deep-seated emotions on his own. Ultimately, he fell into a deep depression, dropped out of college, and describes a general sense of hopelessness. At about the same time, he began hanging out with individuals that he probably would have had the good sense to avoid in the past. Although counsel would not go so far as to say that George's codefendants used him, he was clearly not the mastermind of this absurdly transparent operation. Accordingly, while some punishment is certainly warranted, the defense respectfully submits that considering all the facts and circumstances, this is not the type of criminal conduct that warrants a custodial sentence.

## **Sentence Request and Conclusion**

George Adams committed a crime and must be punished accordingly. However, taking into account all of the relevant 3553(a) sentencing factors discussed above, a guidelines sentence in this case would be unwarranted and greater than necessary. Rather, a felony criminal conviction, 2-year term of supervision with 2-months of home detention,[5] restitution, drug treatment, and counseling would promote respect for the law, provide just punishment for the offense, and provide necessary treatment in an effective manner.

Thank you for the Court's consideration.

Respectfully submitted,

Matthew J. Kluger, Esq.

cc:   AUSA Kevin B. Mead
      USPO Nichole Brown-Morin (email)

---

[5] The defense submits that electronic monitoring would not be necessary to ensure compliance with a period of home detention.